David L. Malbín, J.
The defendants were convicted by a jury of murder in the first degree. The court, in compliance with statutory law, passed a mandatory sentence of life imprisonment. An appeal is presently pending in the Supreme Court of the State of New York, Appellate Division of the Second Judicial Department. The action was remitted to the trial court (25 A D 2d 541) for further proceedings in accordance with the prescribed rules in People v. Huntley (15 N Y 2d 72). It was further directed, in view of the fact that the defendants’ convictions were based, in part, upon the alleged confessions and statements, that the court conduct a full, adequate and independent hearing on the issue of the voluntariness of said statements, and that the determination be made by the trial court without a jury.
The hearing was held. The People without objection offered the entire record of the trial which was received in evidence and marked People’s Hearing Exhibit No. 1. It was also stipulated by the prosecutor and the attorneys representing the respective defendants that neither the police nor the District Attorney advised the accused of their right to the aid of counsel and to remain silent, nor of their right and privilege against self incrimination; nor was there a compliance with the recent requirement that there must be no questioning of an accused while he is in custodial interrogation until he is made aware that he is entitled to the presence of appointed (if he is without means) or retained counsel. The latter warning is a recent *764 requirement arising from the decision in Miranda v. Arizona (384 U. S. 436). It may be noted that during the trial the defendant Spain requested a voir dire hearing as to the admissibility of the statements by him. The defense conducted a thorough and exhaustive examination during which time there were 18 witnesses called by both the defendant Spain and the People.
Suffice it to say that the only proof as to the defendant being the victim of any assaults and threats was adduced by two witnesses: defendant’s mother and stepfather. The remaining witnesses failed to support the defendant’s claim that he was coerced to make the statements and confessions. On the contrary, the proof during this hearing consisted of denials by those police officers connected with the investigation who affirmatively testified that there were no oppressive, coercive or any illegal methods practiced upon the defendant in obtaining the confessions imputed to him. Obviously, that the voir dire hearing was a lengthy and extensive one, may be gleaned from the fact that the testimony was comprised of about 450 pages of the trial minutes. As a matter of fact, during the Huntley hearing conducted by this court his present attorney offered no additional proof and stated he would rest on the record with the consent of the defendant Spain in view of the fact that he was satisfied that he could add nothing to the proof that was adduced at the voir dire hearing of the original trial.
The defendant Henry McNeil submitted additional proof in the Huntley hearing. Testifying in his own behalf, he claimed that he was placed in great fear when a group of people, ‘ ‘ busting in the house with guns and took him into his bedroom.” They (police detectives) severely assaulted him on all parts of his body. He was struck in the eye. Another officer placed his heel on defendant’s forehead, knocked him to the floor, held a gun on his throat and then took him across to a lot on Gold Street; that he was struck while he was in the automobile on the way to the home of his codefendant, Spain. The testimony disclosed that he made no complaints to anyone in authority; that at the time of the alleged incidents above referred to, he was 17 years of age and he was a dropout from his second year in high school.
Doris McNeil, mother of the defendant Henry McNeil, stated she was in the kitchen when she heard a banging on the door; that the officers burst into the house and put a gun against her husband’s ribs; that her children were all sleeping, and then they took her son, the defendant, into the bedroom. She heard sounds like one being hit and like someone was being pushed *765 around and she heard her son say, “ Stop, don’t do that.” She further testified that the detectives would not let her go into the bedroom. She believes that it was around 1:00 a.m. ; that a neighbor named Jeanette was in her apartment. She further testified she did not hear the officers threaten her son nor did she see anyone actually hit him.
The aforesaid evidence comprised all the proof submitted in support of the defense claim that the alleged statements and confessions were inadmissible against defendants Henry McNeil and Charles Spain because they were obtained in violation of the required legal standards.
In rebuttal, the People called the following witnesses:
Detective Quinlan testified that at about 1:15 a.m. on November 28,1963 he went to the home of the defendant Henry McNeil in company with five other officers; that he knocked at the door which was opened by Mrs. McNeil; that the defendant Henry McNeil was taken into custody and questioned in the house and then they all proceeded to the home of defendant Charles Spain; that he and the other officers had their guns drawn when they entered the respective homes of defendants McNeil and Spain; that he further stated that the defendant Henry McNeil had co-operated with him voluntarily and that he never threatened, assaulted, beat or punched or kicked or stomped on the body of the defendant Henry McNeil, and that he never assaulted or threatened or beat the defendant Spain; that he did not see any of the other officers threaten, strike, beat or assault either one of the defendants.
Detective Brady then testified for the People, and denied that he at any time made any threats or engaged in any assaultive or coercive conduct on the defendants McNeil and Spain. He further stated that he did not see any of the officers involved in the arrest at any time assault, kick, beat or threaten either one of the defendants, nor did he hear any of the officers make any threats against them; that he denied that he ever threatened to kill the defendant Spain or any members of his family.
Detective McCarthy was called as a witness and denied that he ever made any threats or that he ever assaulted either one of the defendants Henry McNeil or Spain, and that he did not see any of the officers engage in any assaultive or coercive conduct towards the defendants.
The above evidence and exhibits completed all the proof offered by the defense and the prosecution on the issue of the voluntariness of the statements and confessions.
The defense contends that the statements are inadmissible because they are the product of police methods, that not only *766 were they reprehensible, but that the defendants’ constitutional rights were violated; that the statements were not voluntary, but were obtained by depriving the defendants of due process of law (Jackson v. Denno, 378 U. S. 368; Malinski v. New York, 324 U. S. 401; Stroble v. California, 343 U. S. 181; Payne v. Arkansas, 356 U. S. 560; Lisenba v. California, 314 U. S. 219).
Other grounds were urged which the defendants contend warrant the court to declare the statements and confessions are invalid and inadmissible for noncompliance with the mandate of the case of Miranda v. Arizona (384 U. S. 436). The court proposes to make a finding on the issue of the failure to advise the defendants in accordance with the directive of the Miranda case (supra). The defense contention is rejected; it has no valid basis to the case at bar (Johnson v. New Jersey, 384 U. S. 719).
The defendant Alan McNeil contends, as do all the defendants, that he did not receive the required warnings as to his constitutional and legal rights, and further claims that the statements and confessions should be excluded because of his physical and mental condition at the time that he was interrogated at the hospital. The case relating to the defendant Alan McNeil will be treated at a later point in the court’s decision. In view of the similarity of the issues and the nature of the proof pertaining to the defendants Henry McNeil and Charles Spain, they will be considered at the same time.
The People contend "that the statements were freely and voluntarily made by the defendants Henry McNeil and Charles Spain. On the other hand, these two defendants both claim that they were severely assaulted and beaten; that they had received threats of further beatings until they would make the statements that the police required. The point is made by these two defendants that they were placed in great fear because of the fact that a group of officers, estimated to be from 5 to as many as 10, burst into their homes with drawn weapons, and that this constituted psychological compulsion and was a factor in inducing the defendants to make the alleged statements.
The additional proof adduced at the ‘ ‘ Huntley ’ ’ hearing and the trial record lend no factual support to the bare charges of assault and intimidation against the police. The documentary evidence' (photographs, medical jail reports of the defendants), the failure to make timely complaint and all the attending circumstances were matters considered by the court (Haynes v. Washington, 373 U. S. 503).
The defense contends that the atmosphere created by the appearance of the number of police officers, when they arrived *767 at the defendants’ homes to apprehend the suspected culprits of the murder of the police officer, was one of the compelling factors that induced the defendants to make their inculpatory statements. This situation, it seems to the court, would be the normal and precautionary action taken by the police in hot pursuit of alleged killers. It must be borne in mind that the exigencies of the moment demanded prompt and expedient police action. They were possessed of information that a New York City police detective had been fatally shot in a subway train at Flatbush Avenue, Brooklyn, New York. Their investigation commenced. The search for the suspected killers led them to the homes of the defendants Henry McNeil and Charles Spain. Apparently, a group of detectives, having good reason to assume that the suspects were armed with lethal weapons, closed in upon them in their respective homes in the manner indicated above. It seems quite obvious that the circumstances not only warranted but justified the police action and the precaution to meet any possible attack by the defendants.
After careful consideration of the proof offered in behalf of the defendants Henry McNeil and Charles Spain, and reviewing the trial record, particularly the testimony pertaining to the voluntariness of the alleged statements and confessions, the court is of the opinion that it is unbelievable and incredible. It follows a familiar pattern. The defendants have fabricated and concocted these charges against the police in a bold attempt to create an issue that would destroy their incriminating statements. The proof in its totality belies the claim of the said defendants that they were so violently assaulted and that they were placed in such fear that they were induced to confess. It would tax human credulity to accept the defense complaint of police brutality. The court is of the opinion that the prosecution has produced creditable, trustworthy evidence and has sustained the burden to establish beyond a reasonable doubt that the statements and confessions by the defendants Henry McNeil and Charles Spain were voluntary. Reference has been made to the claim that the defendants ’ constitutional rights were violated because of failure to warn them as required by the Miranda and Johnson cases (supra). Notwithstanding the finding by the court that the accused were not warned before they were questioned, it seems clear that a fair and unstrained interpretation of the Johnson v. New Jersey decision (supra, p. 721), in referring to Miranda (supra), stated, “ We hold further that Miranda applies only to cases in which the trial began after the date of our decision one week ago.” The directive of the required warning was to be applied in cases in which the trial *768 begins after June 13, 1966. In other words, the mandate would be applicable prospectively and not retroactively.
Learned counsel seriously contend that the action having been remitted to the trial court for further proceedings on the issue of voluntariness, and in pursuance thereof a hearing was conducted on September 21, 1966, which is obviously after June 13, 1966, that the defendants are entitled to the application of the rulings in the Miranda and Johnson cases. Simply stated, it is their contention that this ‘ ‘ Huntley ’ ’ hearing is to be construed as a trial.
The court is not convinced that the Miranda and Johnson cases overruled or modified the decision written by Chief Judge Desmond of the New York State Court of Appeals in People v. Huntley (supra). Unquestionably, Miranda and Johnson (supra) would apply to any trials that are commenced after June 13, 1966, and would necessarily overrule People v. Gunner (15 N Y 2d 226) and the opinions followed in People v. Hocking (15 N Y 2d 973), People v. Livingston (15 N Y 2d 977), People v. Green (23 A D 2d 500), People v. Agar (44 Misc 2d 396) and People v. Jackson (46 Misc 2d 742). The court, however, has made a finding that the accused did not receive the warnings required by Miranda and Johnson (supra). This finding may then obviate the necessity for any further proceedings on this issue in the event that the United States Supreme Court or the New York State Court of Appeals prescribes the same procedure to be adopted as directed in Mapp v. Ohio (367 U. S. 643).
The court finds:
(1) That the statements made by the defendant Henry McNeil to Detective Quinlan approximately between the hours of 1:15 a.m. and 2:00 a.m., on November 28,1963, at his home at 192 Sands Street and outside on G-old Street were voluntarily made and of his own free will;
(2) That the statement made to Assistant District Attorney Selzer at the 63rd Precinct, at about 5:00 a.m., on November.28, 1963, during the interrogation of the defendant Henry McNeil was voluntary and of his own free will;
(3) That the statement made to Detective Brady at 443 Bristol Street shortly after 2:15 a.m., on November 28, 1963, by the defendant Charles Spain was voluntary and freely made by him ;
(4) That the statement made by the defendant Spain at the railroad cut in the area of the Long Island Bail Boad in the early morning hours of November 28, 1963, was voluntary and given by the defendant Spain of his own free will;
(5) That the statement made by the defendant Spain to Assistant District Attorney Selzer in the 63rd Precinct at about 6:20 *769 a.m. on November 28, 1963, during the interrogation of the defendant Avas voluntary and freely made by him;
(6) The court finds that the defendants were not advised of their constitutional rights to the aid of counsel and of their privilege against self incrimination and they Avere not Avarned of the requirements directed by the Miranda and Johnson cases (supra).
The above findings are sustained by the evidence. The court rejects .the defense contentions that the alleged statements and confessions were procured from the defendants by coercive and assaultive methods. The defendants Henry McNeil and Charles Spain fail to support their claim that they were threatened, kicked or beaten at any time while in police custody or that any force or psychological compulsion was used to induce said confessions.
There remains the determination of the contention raised by the defendant Alan McNeil. The precise claim of the defendant Alan McNeil may be narrowed to the following inquiries:
(1) Did the physical and mental condition of the defendant impair his power to resist interrogation by his questioners?
(2) Did the possible pain and suffering so weaken him physically that it prevented his clear understanding of the inquiry to which he was exposed?
The defendant Alan McNeil during the hearing called two witnesses to support his claim.
Dr. Michael Mund testified that he was assigned to the Kings County Hospital on November 27,1963; that the defendant Ala.n McNeil arrived in the emergency room at about 11:40 p.m. on that date and that from the statistical and medical history report of the defendant, it was indicated that the defendant was admitted at about 3:35 a.m. on November 28, 1963; that the defendant received two medications at the time of his arrival; these consisted of 10 mg. morphine sulphate and 10 mg. tetanus toxoid; that the defendant was suffering from a gunshot wound in the right femur and that under these circumstances the defendant would suffer some pain. He further stated that the dosage of 10 mg. of morphine would last approximately 4 hours and its purpose was to alleviate any pain; that the dosage of 10 mg. of tetanus toxoid was a precautionary measure to prevent gangrene; that the defendant was taken to a ward and his leg was placed in traction and this was done to reduce pain and he did not have surgery until 4 weeks later; that he had asked the defendant certain questions and that he recorded the information furnished to him by the defendant; that he said that during the *770 period that he was questioning the defendant at about 3 ;45 a.m. the condition of the defendant appeared alert, he was conscious and made responsive answers. The doctor further stated “ He was able to answer all questions. He was aware of his environment # * * appeared to be normal as far as mental faculties were concerned.” The doctor gave his opinion that pain is a varying condition; that reaction to pain varies with different persons. The doctor gave his further opinion that the injection of morphine in the dosage administered did not cloud the mental faculties of the defendant. He further stated that the administering of tetanus toxoid had no effect on the mental condition of the patient. It was conceded at the hearing that the only medication given to the defendant from the time of the entry to the hospital at about 11:40 p.m. on November 27, 1963, until after the completion of all the statements imputed to him at 8:00 a.m. on November 28,1963, was the medication administered in the form of a sedative which was 10 mg. of morphine sulphate and 10 mg. of tetanus toxoid.
Dr. Gerald Deas was the next witness called in behalf of the defendant Alan McNeil, and he stated that he was affiliated with the Kings County Hospital as a resident physician on November 27,1963; that he prescribed the aforesaid medication; that while he was in the hospital he saw six or seven police officers near the defendant and that they remained there during the entire morning. He further stated that the defendant was conscious at all times and that the injury could be extremely painful; that he had a conversation with the defendant after the 10 mg. of morphine sulphate had been administered and that the defendant responded to his questioning. The defendant did express that he had some pain.
Detective Frank Tornabene was then called as a witness in behalf of the defendant and testified that he saw the defendant at about 11:30 p.m. on November 27,1963, in the rear of a taxicab at Flatbush and Nostrand Avenues; that he observed the defendant was suffering from a wound in the right leg; that he accompanied him to the hospital; that he remained in the hospital with the defendant until 8:00 a.m. on November 28, 1963; that there were other officers with him; that he questioned the defendant on several occasions. Detective Tornabene further stated that he took notes of the information received from the defendant during his questioning of him at 6:15 a.m. on November 28,1963; that Assistant District Attorney Selzer arrived at about 7:00 or 7:15 a.m. and that he was present during the interrogation of the defendant,
*771 Defendant Alan McNeil offered himself as a witness and stated that he was 21 years of age; that he had a bullet wound in his right leg that he received at about 11:30 p.m. on November 27, 1963; that he was taken to the Kings County Hospital and he did not know who accompanied him or when he arrived there. The defendant was very hazy about recollecting any of the circumstances at that time, but he did remember being taken from the ambulance on a stretcher and he observed doctors and nurses in the room. Defendant further testified that he was complaining about pain and that there was a time when he was asleep and when he woke up he remembered a lot of people asking him questions. He did not remember anyone in the hospital asking him his name or what questions they asked him, nor did he remember speaking to any doctor in the hospital; nor did he remember giving the doctor his family history and the fact that he had one sister and seven brothers; nor did he remember who the Assistant District Attorney was who asked him any questions.
The foregoing constituted the proof offered to support the defendant’s contentions. The court is of the opinion that the evidence gives no factual support to the defendant’s testimony that he was in such a physical and mental state of mind that he was unable to comprehend his environment or that he was not intellectually equal to respond or resist the inquiry made by his questioners. It would appear from perusing the testimony that the contrary was clearly established. The proof is overwhelming that he was conscious, alert and coherent and that he had sufficient intellect to be able to understand what was taking place. The court rejects the defendant’s own testimony as being untrustworthy. Undoubtedly the defendant had some pain because of the injury to his leg, but from the opinion evidence offered by his own witnesses, it seems that the pain was not of that extent to prevent him from being equal to responding or resisting the interrogation of his questioners. Pain alone is not the criteria to establish that the defendant’s will was overborne or that his confession was not the product of a rational intellect and a free will (see Townsend v. Sain, 372 U. S. 293). Accepting the most favorable view of the evidence offered by the defense, it lends no support to the claim that the confession was not freely and voluntarily made by him (see People v. D’Iorio, 49 Misc 2d 30; People v. Jackson, 46 Misc 2d 742).
The court finds:
(1) That the defendant Alan McNeil was, at about 11:30 p.m. on November 27, 1963, suffering from a gunshot wound and a fracture of the femur of the right leg, and he was removed to the Kings County Hospital;
*772 (2) That the defendant Alan McNeil was administered 10 mg. of morphine sulphate and 10 mg. of tetanus toxoid at about midnight of November 27,1963;
(3) That no further sedation or medication that affected his mental faculties was administered to him during the period from 11:40 p.m. on November 27, 1963 to 8:00 a.m. on November 28, 1963;
(4) That the defendant Alan McNeil was conscious, alert and aware of his surroundings during the entire period of any questioning by the doctors and the police and the District Attorney;
(5) That the injury and the gunshot wound were not located in any vital organs ■ that any pain suffered by the defendant did not and could not have prevented the questioning of the defendant Alan McNeil nor affect his ability to resist the questioner if he so desired;
(6) That about midnight of November 27, 1963, at Kings County Hospital, the defendant Alan McNeil made a free and voluntary statement to Detective Tornabene;
(7) That the defendant Alan McNeil made a statement at about 6:15 a.m. on the morning of November 28, 1963, in the Kings County Hospital to Detective Tornabene and that said statement was a free and voluntary one;
(8) That the defendant Alan McNeil, in the Kings County Hospital, at 7:35 a.m. on the 28th of November, 1963, during the interrogation by Assistant District Attorney Selzer, made a voluntary statement of his own free will ;
(9) That the defendant Alan McNeil was not advised of his constitutional rights and also was not warned in compliance with the requirements directed by the United States Supreme Court.
The court concludes that the statements and confessions made by the defendant Alan McNeil to the police and District Attorney were voluntary, and that the mental and physical condition of the defendant Alan McNeil was not such that it diminished the use of his mental faculties nor was his power to understand and comprehend his environment and the nature of the inquiry lessened; nor did his condition so impair his power that it prevented him to resist the questioner. The court is convinced that the confessions imputed to him were the product of a rational mind and were freely given by him (see Townsend v. Sain, supra; U. S. Const., 14th Arndt.; Code Crim. Pro., § 395; Leyra v. Denno, 347 U. S. 556, 558).
The statements and confessions against the defendants Henry McNeil, Charles Spain and Alan McNeil are declared to have been voluntarily made by each defendant. The proof con *773 clusively establishes that the prosecution has sustained its burden of proof beyond a reasonable doubt, and accordingly the motions to determine that they are all involuntary are denied.
The foregoing constitutes the court’s findings and conclusions and its determination in compliance with the directives of the appellate court.
The District Attorney is directed to submit an order in conformance with the above decision and to return a copy thereof, together with a transcript of the hearings held herein, to the Appellate Division, Second Judicial Department, for further proceedings as may be required therein.